UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BORDELON MARINE, INC., ET AL | CIVIL ACTION NO. 09-3209, |
| VERSUS | c/w 09-6221 and 10-1705 |
| F/V KENNY BOY, ET AL | SEC. "R"   MAG. "3" |

## MEMORANDUM OF KENNY BOY IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (DOCUMENT 103)

MAY IT PLEASE THE COURT:

The insurers in this matter have filed a motion for summary judgment (Document 103). In this motion and supporting memorandum, the insurers admit that, at the time of the collision in question here, they had in force and effect a policy of insurance covering the M/V KENNY BOY. Furthermore, they have provided a copy of the policy (Document 103-2) as an exhibit. A review of the policy will show that it provides coverage for personal injury claims by crew members of the vessel. However, the insurers argue that the owners of the M/V KENNY BOY breached the "total on board warranty" by sailing with a crew of five (captain and four crew members) instead of a crew of four (captain and three crew members). The insurers argue that, due to this alleged breach of warranty, they are entitled to summary judgment relieving them of liability under the policy.

The Kenny Boy defendants would respond that the motion for summary judgment is without merit, for any or all of three reasons.

**1. There are material issues of fact concerning the alleged breach of warranty. The cases relied upon by the insurers were overruled by *Wilburn Boat.***

The analysis of the legal issues set forth by Bordelon Marine in its opposition (Document

109) is correct. In sum, the current law governing maritime insurance policies issued and delivered in Louisiana is set forth in *Chambers v. Joshua Marine, Inc.*, 430 F.Supp.2d 580 (E.D. La. 2006):

> This Court agrees ... that Louisiana law, and not Federal Maritime law, should apply in this matter. **Therefore, a mere breach of a warranty is not enough to void coverage. To the contrary, St. Paul must prove that Joshua Marine had an intent to deceive in addition to the breach of any warranty**. It is the holding of this Court that, based on the evidence provided at this time, there are genuine issues of material fact that are best resolved by the trier of fact after all the testimony has been heard and all the evidence presented. Specifically, there are issues of material fact regarding whether certain warranties were actually breached, and, if so, whether an intent to deceive was present. *(emphasis added)*

In our case, the insurers have offered no evidence whatsoever of intent to deceive and, to the contrary, the evidence in the record supports the conclusion that the Kenny Boy defendants acted, at all pertinent times, with the utmost good faith toward the insurers. See: Documents 87-2, 87-3, and 87-4 (affidavits previously filed by the Kenny Boy defendants and translator in support of the motion to reopen default, same being adopted herein by reference) as well as Exhibits A and B appended hereto (supplementary affidavits filed by the Kenny Boy defendants).

This in itself warrants denial of the summary judgment motion. However, there are two additional reasons to deny the summary judgment motion, as follows.

### 2. There are unresolved fact issues concerning whether the insurer is barred from denying coverage under the doctrines of estoppel/waiver.

The Kenny Boy defendants have described themselves as dealing with two persons whom they understood to be representing the insurance company: "David" and "Cathy." A review of the signature lines on the insurers' 103-2 page 1 and 103-2 page 2 - the cover pages of the insurance policy which the insurers themselves have identified as such - will show that the policy was issued by "Cathy *(last name illegible)*." The signature lines on these two pages are as

follows:

> G & M Marine, Inc.
> BY: Cathy *illegible*
>
> and
>
> On Behalf of All Subscribing Underwriters
> G & M Marine, Inc.
> BY: Cathy *illegible*
> (Duly authorized representative)

The form of these signature lines indicates that the "Cathy" who issued the policies is an agent with authority to bind both G & M Marine and the three insurance companies. It is not possible to determine for certain, on the present record, whether the "Cathy" who issued the policies on behalf of G & M Marine and the insurers was the same "Cathy" who spoke with the Kenny Boy defendants, but it appears probable that this is the case and that one and only one "Cathy" was involved in the sale and issuance of this policy.[1]

"Cathy" was well aware that the Kenny Boy defendants had a language barrier and would not be able to read the policy application, the policy, or any other communication sent them by the insurer. She knew this because she herself spoke to them in Vietnamese, due to their limited English ability, as per affidavits appended hereto. She herself undertook the responsibility of gathering necessary information from them, selecting a suitable policy, and explaining the policy to the Kenny Boy defendants in the Vietnamese language.

If there is any miscommunication or misunderstanding in this case - and it appears that such may be the case - then the problem exists due to the fault or neglect of "Cathy", the agent

---

[1] G & M Marine is a Louisiana corporation with its principal place of business in New Orleans, so any "Cathy" working on behalf of G & M Marine would be based in the New Orleans area, strengthening the inference that the "Cathy" who spoke with the Kenny Boy defendants is the same "Cathy" who signed and issued the insurance policy.

and "duly authorized representative" of the three insurers and G & M Marine.

Even prior to *Wilburn Boat*, it was an established legal principle that a marine insurer is estopped from enforcing, or waives the right to enforce, a warranty provision in a marine insurance policy if the insurer's actions reasonably lead the insured to believe that the warranty will not be enforced, causing detrimental reliance by the insured. *Reliance Insurance Company v. The Yacht Escapade*, 280 F.2d 482 (5th Cir. 1960). In our case, all the evidence in the record points to the conclusion that the Kenny Boy defendants reasonably relied on the "duly authorized agent" of the three insurers and G & M Marine, Inc. to help them select a suitable policy and provide them with accurate information concerning policy coverage. As a result of this reliance, they paid a premium for insurance (as well as at least one renewal premium) and, thus, lost the opportunity to negotiate for and purchase other more suitable insurance. In addition, to this date, the insurer has not offered to refund any portion of the premiums charged.[2] *See Aetna Insurance Co. v. Houston Oil and Transport Co.*, 49 F.2d 121 (5th Cir. 1931) (acceptance and retention of premium can result in estoppel on proper factual showing, although not on the facts of the case at hand).

Therefore, even if the Total On Board Warranty were otherwise enforceable which it is not, the insurer has waived this warranty and is estopped from denying coverage based on the alleged breach of warranty or, at the very least, the record points to the conclusion that there are

---

[2] A review of the insurance policy will show that the total premium was a combination of two separate premiums: one for hull coverage, the other for protection and indemnity (Document 103-3 p. 11). The defendants have altered the policy by lining through the premium amounts so that it is impossible to determine how much the defendants have charged - and retained - as the cost of providing p & i coverage which, if the insurers' current position is correct, was NEVER available to the M/V/ KENNY BOY at ANY time during the many years that the policy and its predecessor policy were in force, because the vessel always sailed with a captain and four man crew, a fact which the insurers could easily have discovered through reasonably inquiry at the time the policy was sold (see issue 2 infra).

unresolved fact issues concerning estoppel/waiver.

> **3. The policy is ambiguous and must be interpreted against the insurer and/or the policy contains a term of art which must be interpreted using extrinsic evidence.**

The policy contains the following pertinent provisions, in direct sequence one after the other (Document 103-2 page 11 of 12):

> CAPTAIN AND CREW (P&I) CLAUSE
>
> If an owner or part owner of the insured vessel(s) is a Captain or member of the crew of the insured vessel(s), or an owner or part owner of the vessel(s) is acting as Captain or member of the crew of an insured vessel(s), coverage under the Protection and Indemnity Section of this policy is limited to maintenance and cure for the owner and/or part owner. This provision applies whether the vessel(s) is owned by a corporation, partnership, individual or individuals.
>
> TOTAL ON BOARD WARRANTY
>
> Notwithstanding anything contained herein to the contrary, it is warranted that the total number of persons aboard the vessel(s) named herein at any one time shall not exceed __4__

A review of the Protection and Indemnity Section (Document 103-3 page 7) will show that this clause provides insurance coverage to the insured against having to pay for any of the following:

> Loss of life of, or injury to, or illness of, any person.

As a matter of hornbook law, policy provisions should be construed together and it is proper to reference the Captain and Crew (P&I) Clause and the Protection and Indemnity Section in order to determine the meaning of the Total On Board Warranty. When these portions of the policy are read together, two points are apparent:

> First, an owner who serves as a captain or crew member is placed in a completely different category from other persons who come aboard the vessel. The owner is prohibited from bringing a personal injury claim against the insurer. He is limited to maintenance and cure.
>
> Second, the maximum number of personal injury claims that the insurer is contractually obligated to defend and indemnify is four.

This presents a question as to the meaning of the term "person" in the Total On Board Warranty and, in particular, is an owner who acts as a captain or crew member a "person" within the meaning of the Total On Board Warranty, even though he has no right to bring a personal injury claim?

In this connection, it should be noted that, when an insurance policy is construed, the general rule of construction is that, when a word has an ordinary and customary meaning, then it should be given this ordinary and customary meaning in the insurance policy. However, there is an exception to this general rule: a word which has an ordinary and customary meaning may ALSO have a different meaning: the word maybe a "term of art" which has a technical meaning to those engaged in a particular industry or to those who issue specialized insurance covering the particular risks of the industry. When this is the situation, the word which is a "term of art" is construed as having a meaning different from its ordinary and customary meaning. In *Boudreaux v. Fireman's Fund Insurance Company*, 654 F.2d 447 (5th Cir. 1981), the Fifth Circuit recognized the rule and exception by stating that, in construing an insurance company, the general rule is that the court should give the words in the policy their ordinary and customary meaning, but there is one exception:

> Variance from this rule is only if a word is used as a "term of art", in which case its meaning in the area for which it is a term of art is applied.

Even the commonest words in the English language may be treated as terms of art when either the jurisprudence or the evidence warrants this treatment. *See, e.g., Comer v. Life Insurance Company of Alabama*, 08-228 (D. S.C. 6/2/10); 2010 WL 2232204 (the word "charges" is a term of art in health care policy); *Trunzo v. Allstate Insurance Company*, 04-1789 (W.D. Pa. 9/25/06) 2006 WL 2773468 (the words "auto" and "we" are terms of art as used

in automobile insurance policy) *Interstate Business Men's Accidental Association of Des Moines, Iowa v. Lester*, 257 F. 225 (8th Cir. 1919) (The word "accidental" is a term of art when used in an accident insurance policy.)

This presents the question of whether the term "person" in the Total On Board Warranty should be treated as ambiguous and/or as a term of art of marine insurance on the facts of our case. The policy does not contain any definition of the word "person." A preliminary review of the jurisprudence and, at this point, has not found any jurisprudence which addresses the issue of whether "person" is or is not a term of art. Reviewing the evidence available to date, the evidence suggests, at the very least, that the term "person" may be a term of art as used in the policy currently before this Honorable Court for construction.

More specifically, over the course of several years, the Kenny Boy owners have had conversations with two different insurance agents or brokers. These conversations are described in the affidavits appended hereto Exhibits A and B and in the affidavits appended to the motion to reopen default. Documents 87-2, 87-3, and 87-4, which are adopted here by reference. Judging by the descriptions of the conversations contained in the affidavits, it is evident that, at the time the policy was issued, the matter which was of critical concern to the insurers was to emphasize the special status of the owner/captain and the fact that the owner/captain would not be able to bring a personal injury claim. This point was repeatedly emphasized in discussions with the Kenny Boy defendants. In other words, the insurers were not concerned with the total number of persons who were physically aboard the vessel; the focus of the insurers was on the total number of persons who would be able to pursue personal injury claims in the event of injury.

This points to the conclusion that the term "person" in the Total On Board Warranty is

ambiguous and/or a term of art and the owner/captain is not a "person" for the purposes of this warranty.[3] If the owner/captain is not a "person" within the meaning of the Total On Board Warranty, then there has been no breach of the warranty.

On this record, there are unresolved fact issues as to whether the term "person" is a term of art in the maritime insurance context. Any attempt to resolve this matter by summary judgment is, at best, premature. At the very least, plaintiffs should be given adequate opportunity to identify and depose "David" and "Cathy" to find out what instructions the insurers gave them concerning the meaning of the term "person" in the Total On Board Warranty and to determine if the term "person" has a usual and customary meaning in the marine insurance industry which is different from its meaning in ordinary English.

## CONCLUSION

Each of the three reasons set forth above is, by itself, sufficient to justify denying the motion for summary judgment. Accordingly, for any or all of the reasons set forth above, the motion for summary judgment should be denied.

Respectfully submitted:

_[signature]_

James P. DeSonier, Bar No. 4907
450 N. Causeway Blvd. Suite C
Mandeville, LA 70448
Telephone: (985) 951-8510
Facsimile: (985) 951-8545

---

[3] If the term "person" is ambiguous, then the policy is construed against the insurers as a matter of law. If the term "person" is arguably a term of art among marine insurers, then extrinsic evidence is admissible to show the meaning of the term. Either way, summary judgment is not proper.

## CERTIFICATE

I hereby certify that on the 19th day of October, 2010, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record, by operation of the court's electronic filing system.

_____
James P. DeSonier