UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

BORDELON MARINE, INC., ET AL.                CIVIL ACTION

VERSUS                                        NO: 09-3209 c/w
                                              09-6221, 10-1705

F/V KENNY BOY, ET AL.                         SECTION: R(3)

**ORDER AND REASONS**

Before the Court is defendant G&M Marine, Inc.'s motion to dismiss, or in the alternative motion for summary judgment.[1] Because the insurance policy at issue unambiguously provides that G&M is not an insurer and that it cannot be held liable for claims related to coverage, the Court GRANTS G&M's motion.

I.   BACKGROUND

This case arises out of the March 14, 2009 collision of the

---

[1] (R. Doc. 77.) Unless otherwise indicated, all record citations refer to the docket in civil action number 09-3209.

F/V KENNY BOY, which is owned by Kenny Boy of Mandeville, Inc., and the M/V RACHEL BORDELON, which is owned by Bordelon Marine, Inc. At that time, the F/V KENNY BOY was insured for marine and hull coverage as well as protection and indemnity (P&I) under a policy "[e]ffected by G&M Marine, Inc. – Marine Insurance Underwriters."[2] The first page of the policy includes the following disclaimer:

> In consideration of the stipulations herein named and of the premium as shown above
>
> This policy is made and accepted and accepted subject to the foregoing stipulations and conditions, which are hereby specifically referred to and made a part of this policy, together with such other provisions, agreements or conditions as may be endorsed hereon or added hereto.
>
> It is expressly understood and agreed by the Assured by accepting this instrument, that G&M Marine, Inc., is not an Insurer hereunder and that G&M Marine, Inc., shall not be in any way or to any extent liable for any loss or claim whatever, but that the Insurers hereunder are those individual Insurance Companies and/or Underwriters, whose names appear herein.[3]

On page two, the policy lists three "subscribers" – St. Paul Fire & Marine, National Casualty Company, and American Alternative Insurance Corporation.[4] The policy identifies St. Paul Fire as

---

[2]  (R. Doc. 77-3 at 1.)

[3]  (*Id.*)

[4]  (*Id.* at 2.)

2

the "Lead Assurer" and indicates that it was responsible for insuring 34 percent of Kenny Boy's coverage.[5] National Casualty and American Alternative each insured an additional 33 percent.[6] The policy is signed by an employee of G&M, which the policy identifies as the subscribers' "Duly Authorized Representative."[7] Also relevant to this matter, the policy includes a "TOTAL ON BOARD WARRANTY."[8] That portion of the policy states, "Notwithstanding anything contained herein to the contrary, it is warranted that the total number of persons aboard the vessel(s) named herein at any one time shall not exceed 4."[9]

 G&M issued a check to Kenny Boy in the amount of $42,300.00 to cover hull damage to the F/V KENNY BOY resulting from the collision on March 26, 2009.[10] According to an April 3, 2009, letter sent from G&M to Kenny Boy, G&M Marine had begun an investigation into the collision, which revealed that a crew member who was aboard the F/V KENNY BOY, Phuc Van Tran, alleged

---

 [5] (*Id.*)

 [6] (*Id.*)

 [7] (*Id.*)

 [8] (*Id.* at 11.)

 [9] (*Id.*)

 [10] (R. Doc. 113-7 at 1.)

injuries to his wrist and back.[11]  The investigation also revealed that, at the time of the collision, there were a total of five people aboard the F/V KENNY BOY.[12]  The letter informed Kenny Boy that, because the total number of persons aboard the F/V KENNY BOY exceeded four at the time of the collision in violation of the TOTAL ON BOARD WARRANTY, the policy did not afford P&I coverage to Kenny Boy for Phuc Van Tran's claims.[13]

On April 2, 2009, Bordelon filed suit against the F/V KENNY BOY, Kenny Boy, and G&M.[14]  Bordelon alleges that the F/V RACHEL BORDELON suffered significant damage as a result of the collision and that the collision resulted exclusively from Kenny Boy's fault and negligence.[15]  On September 9, 2009, Bordelon filed a separate complaint seeking limitation of liability from any personal injury claims arising out of the collision.[16]  The two cases were consolidated on September 22, 2009.[17]

Three crew members who were working aboard the F/V KENNY BOY

---

[11]   (R. Doc. 113-5.)

[12]   (*Id.*)

[13]   (*Id.*)

[14]   (R. Doc. 1.)

[15]   (*Id.* at ¶¶ 9, 12.)

[16]   (Civ. A. No. 09-6221, R. Doc. 1.)

[17]   (R. Doc. 8.)

at the time of the collision, Phuc Van Tran, Cuong Van Le, Hanh Van Truong, and Thinh Ba Nguyen, filed an answer and complaint in Bordelon's first suit, alleging that Kenny Boy, the F/V KENNY BOY, Bordelon, the M/V BORDELON, and G&M Marine are jointly and severally liable for their injuries.[18]  They seek maintenance and cure as well as damages for injuries resulting from the collision, which they allege resulted from the negligence of Kenny Boy and Bordelon and/or the unseaworthiness of the F/V KENNY BOY and the M/V RACHEL BORDELON.[19]

   Phuc Van Tran later filed a separate complaint against the F/V KENNY BOY, Kenny Boy, G&M, St. Paul Fire & Marine, National Casualty Company, and American Alternative Insurance Corporation.[20]  Phuc Van Tran alleges, *inter alia*, that G&M issued a policy of P&I general marine liability insurance that was in effect on the date of the incident and that G&M is liable for his injuries as a Kenny Boy insurer.[21]  Phuc Van Tran's action was consolidated with the other two actions on June 14,

---

[18]   (R. Doc. 11.)

[19]   (*Id.*)

[20]   (Civ. A. No. 10-1705, R. Doc. 1.)

[21]   (*Id.* at 4.)

2010.[22]

G&M now moves to dismiss Phuc Van Tran's claims, or in the alternative for summary judgment, arguing that the limitation of liability in the policy precludes Phuc Van Tran's claims against it.[23]

**II.   STANDARD**

Because the parties' submit matters outside the pleadings, the Court will treat G&M's motion as a motion for summary judgment.  *See* Fed. R. Civ. P. 12(d).  Summary judgment is appropriate when there are no genuine issues as to any material facts and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor."  *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The moving party bears

---

[22]   (Civ. A. No. 10-1705, R. Doc. 4.)

[23]   (R. Doc. 77.)

the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## III. DISCUSSION

### A. Choice of Law

As a threshold matter, the Court must determine whether state law or maritime law governs this dispute. Although the Court recognizes that a marine insurance contract "is indisputably a marine contract within federal admiralty jurisdiction," *New Hampshire Ins. Co.*, 993 F.2d at 1198, it is well-settled Fifth Circuit law that "[s]tate law governs

construction of marine insurance contracts except where it is displaced by admiralty law." *Employers Ins. of Wausau v. Trotter Towing Corp.*, 834 F.2d 1206, 1210 (5th Cir. 1988). "[T]he interpretation of a contract of marine insurance is – in the absence of a specific and controlling federal rule – to be determined by reference to appropriate state law." *Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 886 (5th Cir.1991) (en banc).

The Fifth Circuit has identified three factors that a court should consider to determine whether a federal rule controls the disputed issue: "(1) whether the federal maritime rule constitutes 'entrenched federal precedent'; (2) whether the state has a substantial and legitimate interest in the application of its law; [and] (3) whether the state's rule is materially different from the federal maritime rule." *Id.* at 886. The Court is unable to find, nor has any party cited to, any law that differentiates Louisiana law from federal maritime law with regard to the interpretation of an insurance contract. For example, under both federal law and Louisiana law, the insured bears the burden of proving coverage, whereas the insurer bears the burden of proving the applicability of any policy exclusions. *See New Hampshire Ins. Co.*, 993 F.2d at 1199; *Tunstall v. Stierwald*, 809 So.2d 916, 921 (La. 2002). Accordingly, the Court finds that no federal rule displaces state law and that

substantive Louisiana state law applies to the interpretation of this maritime insurance contract.

**B.   Analysis under Louisiana Law**

Louisiana courts interpret an insurance policy in accordance with the general rules of contract interpretation.  *See Thermo Terratech v. GDC Enviro-Solutions, Inc.*, 265 F.3d 329, 334 (5th Cir. 2001) (citing *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 763 (La. 1994)).  This interpretation requires a judicial determination of the common intent of the parties to the contract.  *See Thermo Terratech*, 265 F.3d at 334. The intent of the parties, "as reflected by the words of the policy[,] determine[s] the extent of coverage."  *Id.*  A court construes the terms of an insurance policy according to their "general, ordinary, plain, and proper meaning . . . unless [they] have acquired a technical meaning."  *Id.*  Moreover, "[a]n insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by the terms or so as to achieve an absurd conclusion."  *Carrier v.. Reliance Ins. Co.*, 759 So.2d 37, 43 (La. 2000).

Under Louisiana law, "the burden in an action on an insurance contract is on plaintiff to establish every fact in issue to his cause of action or right of recovery, including

existence of policy sued on, its terms and provisions, and that his claim is within coverage." *B.T.U. Insulators, Inc. v. Maryland Cas. Co.*, 175 So.2d 899, 902 (La. Ct. App. 1965). When the language of an insurance policy is clear, the policy must be enforced as written. *Thermo Terratech*, 265 F.3d at 334. "If a contract is unambiguous on its face, the contract's meaning and the intent of the parties must be sought within the four corners of the document and cannot be explained or contradicted by extrinsic evidence." *Shocklee v. Mass. Mut. Life Ins. Co.*, 369 F.3d 437, 439-40 (5th Cir. 2004).

An examination of Kenny Boy's policy reveals that the parties clearly intended to exclude G&M from liability. The policy includes a conspicuous disclaimer on the first page that states "G&M Marine, Inc., is not an Insurer hereunder" and "shall not be in any way or to any extent liable for any loss or claim whatever, but that the Insurers hereunder are those individual Insurance Companies and/or Underwriters, whose names appear herein."[24] Also on the first page, the policy states, "The subscribers hereto, each severally but not jointly, do make insurance and cause to be insured, for their respective amounts

---

[24] (R. Doc. 77-3 at 1.)

as set forth herein."[25] The policy goes on to list three "subscribers" to the policy – St. Paul Fire & Marine, National Casualty, and American Alternative – that were together responsible for 100 percent of Kenny Boy's total coverage.[26] The policy is signed by G&M Marine "On Behalf of All Subscribing Underwriters."[27] And G&M is identified as a "Duly Authorized Representative."[28]

Phuc Van Tran has not identified any ambiguity in the contract itself, except to point out that the header of the policy states "This Policy of Insurance is Effected by G&M Marine, Inc. – Marine Insurance Underwriters."[29] Yet, that G&M "effected" the policy is not inconsistent with the policy's disclaimer that G&M is not an insurer. To "effect" is defined as "[t]o cause to come into being" or "to put into operation." *See Webster's Collegiate Dictionary* 397 (11th ed. 2009); *see also Black's Law Dictionary* 592 (9th ed. 2009) (defining "effect" as "[t]o bring about; to make happen"). By signing the policy as

---

[25] (*Id.*)

[26] (*Id.* at 2.)

[27] (*Id.*)

[28] (*Id.*)

[29] (*Id.* at 1.)

11

the subscribers' "Duly Authorized Representative," G&M was responsible for putting the policy into operation, but did not assume the risk of insuring the Kenny Boy.

Nor does G&M's identification as "underwriter" necessarily imply that G&M was an insurer. The Court acknowledges that the term "underwriter" can be a synonym for "insurer." *See Black's* at 1665 (defining "underwriter" as "insurer"). It is also defined, however, as "one who selects risks to be solicited or rates the acceptability of risks solicited." *Webster's* at 1365. This second definition is consistent with G&M's position that it placed Kenny Boy's insurance applications with the subscribers who then assumed 100 percent of the risk. More importantly, other statements in the policy, discussed above, clarify any confusion created by the header of the policy as to G&M's role. The single reference to G&M as an "underwriter" – even giving that term the meaning of "insurer" – cannot not override the explicit and conspicuous exclusion of liability on the same page.

Even if use of the term "underwriter" creates an ambiguity in the contract, which it does not, Phuc Van Tran has submitted no evidence that creates a genuine issue of material fact as to whether G&M was an insurer and liable for claims. First, Phuc Van Tran points to G&M's statements in complaints for declaratory

12

judgment filed in two separate actions, involving different parties, in the Eastern District of Louisiana: *National Casualty Co. et al. v. Tommy Cao*, Civ. A. No. 10-159, and *National Casualty Co. et al. v. T&D Fishery, LLC*, Civ. A. No. 10-3358.[30] There, G&M represented that it "issued" the policies underlying the insureds' claims and identified itself as a "marine insurance underwriter . . . licensed to issue policies of Hull and Machinery and Protection & Indemnity Insurance on behalf of various subscribing underwriters."[31] Phuc Van Tran contends that G&M's representations in those complaints conflict with its current position that it merely brokered and administered the policy.[32]

As an initial matter, the Court notes that G&M's representations in other cases have no bearing on whether it can be held liable for claims in this case. *Cf. Venable v. Hilcorp Energy Co., Inc.*, 2010 WL 1817757, *2 (E.D. La. 2010) (noting that an insurers obligations to any other party in a case are governed by its contract of insurance with the insured). Nonetheless, an examination of the complaints that Phuc Van Tran

---

[30]   (*Id.* at 4.)

[31]   (R. Doc. 113-2 at 2-3; R. Doc. 113-3 at 2-3.)

[32]   (R. Doc. 113 at 4.)

has submitted reveals that they do not support an inference that G&M is liable for his injuries.  G&M brought both cases along with two other plaintiffs that were identified as "subscribers" on the policies at issue, National Casualty Company and American Alternative Insurance Corporation.  The complaints identify National Casualty and American Alternative as "foreign insurers." By contrast, G&M is defined as "a marine insurance underwriter . . . licensed to issue policies of Hull and Machinery and Protection & Indemnity Insurance *on behalf of* various subscribing underwriters in the State of Louisiana."[33]  Contrary to Phuc Van Tran's contention, G&M's representations in those complaints is consistent with its evidence that it was not an insurer under the Kenny Boy policy, but instead a "third party programs claims administrator"[34] that places insurance applications with subscribers.[35]

 Phuc Van Tran also points to a letter from G&M to Kenny Boy, dated April 3, 2009, in which G&M states that it "issued its policy" to provide "hull and protection and indemnification

---

[33] (R. Doc. 113-2 at 2-3; R. Doc. 113-3 at 2-3.)

[34] (R. Doc. 134-2, Ex. B at 3.)

[35] (R. Doc. 134 at 3.)

coverage."[36]  Phuc Van Tran suggests that, because G&M represented that it "issued" the policy and referred to the policy as "its," there is a genuine question of material fact as to whether G&M was an insurer and liable for claims under the policy.  Yet, G&M's reference to the policy in the April 3 letter does not create a material issue of fact on this question.  Clearly, G&M "effected" or "issued" the policy, which was printed on G&M letterhead and signed by a G&M employee.  But "issuing" a policy is distinct from "insuring" one.  *Cf. Thompson v. Goetzman*, 337 F.3d 489, 497-98 (5th Cir. 2003) (explaining that an "insurer" is "the party to a contract of insurance who assumes the risk and undertakes to indemnify the insured, or pay a certain sum on the happening of a specified contingency") (quoting 3 *Couch on Insurance* § 39:1 (3d ed. 2002)).  And the policy is clear that the subscribers – not G&M – were exclusively responsible for Kenny Boy's coverage.

In addition, Phuc Van Tran relies on G&M's decision to pay Kenny Boy's hull damage claim on March 26, 2009 and to deny the P&I claims related to Phuc Van Tran's injuries on April 3, 2009.  He contends that, because G&M had the authority to perform those functions there is a genuine issue of material fact as to whether

---

[36] (R. Doc. 113-5, Ex. D at 1.)

G&M was an insurer.[37]  G&M's conduct, however, is not inconsistent with the terms of the policy, which identifies G&M as the subscribers' "Duly Authorized Representative."  Nor is G&M's conduct inconsistent with its evidence that it acted as a third party programs claims administrator for the subscribers.[38]  That G&M administered the policy of the subscribers' behalf does not make G&M an insurer given the plain terms the exclusion of liability.

Finally, Phuc Van Tran refers to the existence of a "mysterious 'binder agreement'" executed between G&M and the three subscribers and suggests that the agreement's contents could be relevant to whether G&M was an insurer under the policy.[39]  On summary judgment, the Court is constrained to consider the evidence in the record, and it cannot credit Phuc Van Tran's speculative assertions regarding the possible contents of the agreement.  *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) (explaining that, to avoid summary judgment once the movant has satisfied its burden, the nonmoving party should "identify specific evidence *in the record* demonstrating that

---

[37]   (R. Doc. 113 at 5.)

[38]   (R. Doc. 134-2 at 3.)

[39]   (R. Doc. 113 at 4-6.))

there is a material fact issue concerning essential elements of its case for which it will bear the burden of proof at trial") (emphasis added), *cert denied*, 513 U.S. 871 (1994).

## IV. CONCLUSION

The intent of the parties is unambiguous from the language in the policy: G&M was not an insurer and cannot be held liable for Phuc Van Tran's claims. *See In re Katrina Canal Breaches Consolidated* Litigation, 2008 WL 4091033, *8-9 (E.D. La. 2008) (finding plaintiff's claims against an insurer barred by an unambiguous policy exclusion); *Marchese v. State Farm Fire & Cas. Co.*, 396 So.2d 490, 492 (La. Ct. Ap. 1981) ("It is an established principle of our jurisprudence that the insurer and the insured may agree to limit liability in any manner, in the absence of a statutory provision to the contrary.") (quoting *Guy v. Egano*, 236 So.2d 542, 547 (La. Ct. App. 1970)); *see also Sims*, 956 So.2d at 595 (La. 2007) (noting that summary judgment was "particularly appropriate" because "the insurance contracts, being clear and unambiguous, can be construed from the four corners of the instruments."). Further, even if the policy were ambiguous and consideration of extrinsic evidence were appropriate, there is no evidence sufficient to create a material fact issue as to whether G&M was an insurer under the policy. For these reasons, G&M's


motion for summary judgment is GRANTED.

New Orleans, Louisiana, this 18th day of January, 2011.

_____

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE