UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BORDELON MARINE, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-3209 C/W 09-6221** |
| **F/V KENNY BOY, ET AL.** | **SECTION "R" (3)** |

**ORDER**

On January 5, 2011, the Motion to Compel Defendant, Bordelon Marine, Inc., to Fully Respond to Plaintiff's Interrogatories and Requests for Production of Documents, and Motion for Sanctions, Attorney Fees and Costs [Doc. #172] and the Motion for Sanctions and Attorneys' Fees and Expenses Pursuant to Rule 30(d)(2) [Doc. #208] came on for oral hearing before the undersigned. Present were Robert Reich and Leah Rhodes on behalf of plaintiff-in-limitation Bordelon Marine, Inc. ("Bordelon"), Stephen Kreller and Neal Nazareth on behalf of claimant Phuc Van Tran, Wilton Bland and Jacques DeGruy on behalf of G&M Marine, Inc. and Rene Sabathier and Alan Schoenberger on behalf of other consolidated claimants. After the oral hearing, the Court took the two motions under advisement. Having reviewed the motions, the memoranda, the oppositions, the case law and the parties' arguments, the Court rules as follows.

**I.     Background**

Defendant Kenny Boy, Inc. owned and operated the vessel Kenny Boy. Defendant G&M

Marine, Inc. insured the vessel. On March 14, 2009, the vessel Kenny Boy allegedly collided with the vessel M/V Rachel Bordelon. The Rachel Bordelon, owned by Bordelon Marine, Inc. ("Bordelon"), allegedly sustained significant physical damage and damages associated with the cost of survey and loss of use. Because Bordelon may be liable to any of its allegedly injured crew, Bordelon claims defense, contribution and indemnity from defendants. Bordelon alleges that the crew of the Kenny Boy was intoxicated or under the influence of drugs at the time of the accident, and it is thus entitled to punitive damages.

Later, the now-consolidated claimants – the allegedly injured crew members – filed suit against both entities, alleging injuries from the accident. Bordelon then filed an action in limitation.

## II.  Motion to Compel Defendant, Bordelon Marine, Inc., to Fully Respond to Plaintiff's Interrogatories and Requests for Production of Documents, and Motion for Sanctions, Attorney Fees and Costs [Doc. #172]

With regard to the motion to compel, the main dispute concerns recorded and written statements of various crew members after the collision and a surveillance video of claimant Phuc Van Tran. After the oral hearing, the Court ordered Bordelon to submit the materials to the Court for *in camera* review. At the oral hearing, Bordelon argued that the work-product doctrine protects the materials from disclosure because they were prepared in anticipation of litigation.

The work-product doctrine is codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure. *Conoco v. Boh Bros. Constr. Co.*, 191 F.R.D. 107, 117-18 (W.D. La. 1998). This doctrine protects from discovery documents and other tangible things prepared by a party or representative of a party, including attorneys, consultants, agents, or investigators, in anticipation of litigation. *Id.* at 118; *see also Hickman v. Taylor*, 329 U.S. 495 (1947). The work-product doctrine does not protect materials assembled in the ordinary course of business, pursuant to

2

regulatory requirements, or for other non-litigation purposes. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 984 (4th Cir. 1992); *Guzzino v. Felterman*, 174 F.R.D. 59, 63 (W.D. La. 1997) (citing *United States v. El Paso Co.*, 682 F.2d 530 (5th Cir. 1982)). The party who is seeking the protection of the work-product doctrine has the burden of proving that the documents were prepared in anticipation of litigation. *Boh Bros.*, 119 F.R.D. at 117; *In Re Leslie Fay Cos. Sec. Litig.*, 161 F.R.D. 274, 280 (S.D.N.Y. 1995).

The threshold determination that the court must make is whether the documents sought to be protected were, in fact, prepared in anticipation of litigation or whether they were prepared in the ordinary course of business. *Upjohn Co. v. United States*, 449 U.S. 383 (1981); *Caremark, Inc. v. Affiliated Computer Sys., Inc.*, 195 F.R.D. 610, 614 (N.D. Ill. 2000). The Fifth Circuit has indicated that a document is prepared in anticipation of litigation "as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *United States v. Davis*, 636 F.2d 1028, 1039 (5th Cir.1981). To determine the primary motivation for the creation of a document, courts look to various factors, including, "the retention of counsel and his involvement in the generation of the document and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance." *Elec. Data Sys. Corp. v. Steingraber*, No. 4:02 CV 225, 2003 WL 21653414, *5 (E.D. Tex. July 9, 2003) (citing *Piatkowski v. Abdon Callais Offshore, L.L.C.*, No. Civ. A. 99-3759, 2000 WL 1145825, *2 (E.D. La. 2000)). "The involvement of an attorney is not dispositive of the 'in anticipation of litigation' issue. Nevertheless, involvement of an attorney is a highly relevant factor . . . making materials more likely to have been prepared in anticipation of litigation." *Wikel v. Wal-Mart Stores, Inc.*, 197 F.R.D. 493, 495 (N.D. Okla. 2000).

Here, Bordelon has simply failed to demonstrate that the statements were prepared in anticipation of litigation and not in the ordinary course of business. Bordelon's privilege log simply lists the documents and the dates. There is no indication that Bordelon did not prepare the statements in the ordinary course of business. This Court has recognized on numerous occasions that corporations such as Bordelon may conduct investigations into accidents to prevent reoccurrences and improve safety procedures. *See, e.g., Foret v. Tansocean Offshore (USA), Inc.*, Civ. A. No. 09-4567, 2010 WL 2732332, *4-5 (E.D. La. July 6, 2010). There are no dates on the written statements, and it is thus unclear when they were written and/or whether counsel had been retained at that time. Neither is it clear from the transcripts of the recorded statements whether Bordelon had at the time retained counsel. Tommy Halverson, Jr., a claims adjuster with E. J. Halverson & Associates, Inc., conducted the interviews, and there is no indication that an attorney was present or whether counsel had been retained. Here, Bordelon has simply failed to meet its burden to prove to the Court that the primary motive behind the creation of the statements was the anticipation of litigation.

In addition, this Court has often expressed the opinion that Fifth Circuit case law and the applicable Federal Rules of Civil Procedure require the production of a party's statement and surveillance materials before that party's deposition, when those materials have been requested in discovery and in the absence of a showing of good cause to withhold them. *See Robert M. Karr v. Four Seasons Maritime, Ltd.*, Civ. A. No. 02-3413, 2004 WL 797728 (E.D. La. April 12, 2004) (citing, *inter alia*, *Chiasson v. Zapata GulfMarine Corp.*, 988 F.2d 513, 517 (5th Cir. 1993)).

In line with *Chiasson*, this Court has often required production of surveillance video before trial. *See, e.g., Southern Scrap Material Co. v. Fleming*, No. Civ. A. 01-2554, 2003 WL 21474516,

*14-15 (E.D. La. June 18, 2003). In *Chiasson*, the Fifth Circuit addressed the discoverability of videotape surveillance. The court held that, regardless of whether the surveillance video has impeachment value, it must be disclosed prior to trial if it is at all substantive evidence as opposed to solely "impeachment evidence." 988 F.2d at 517-18.[1] The video at issue here is clearly protected by the work-product doctrine as it was prepared in anticipation of litigation. Having reviewed the 11-minute surveillance video and the numerous allegations in the complaints in these consolidated suits, however, the Court finds that the video possesses substantive value. Here, plaintiff's assertions of physical pain and disability are key issues for the jury to decide in calculating his damages.[2] As in *Chiasson*, the surveillance tapes bear directly on the severity of plaintiff's pain and the limitations on his mobility. It thus possesses substantive value and is discoverable. Accordingly,

**IT IS ORDERED** that the Motion to Compel Defendant, Bordelon Marine, Inc., to Fully Respond to Plaintiff's Interrogatories and Requests for Production of Documents, and Motion for Sanctions, Attorney Fees and Costs [Doc. #172] is GRANTED. Bordelon shall produce the aforementioned materials to claimant Tran **no later than three (3) days from the date of this Order**.

---

[1] In addition to *Chaisson*, numerous other courts have considered the discoverability of surveillance tapes, which are intended for use at trial, and, almost uniformly, these courts have held that evidentiary films or videotapes must be provided to the opposing party prior to trial. *E.g., Forbes v. Hawaiian Tug & Barge Corp.*, 125 F.R.D. 505, 507-08 (D. Hawaii 1989); *Snead v. American Export-Isbrandtsen Lines, Inc.*, 59 F.R.D. 148, 150-51 (E.D. Pa. 1973).

[2] Addressing substantive evidence, the Fifth Circuit held that "substantive evidence is that which is offered to establish the truth of a matter to be determined by the trier of fact." *Chiasson*, 988 F.2d at 517. The court then noted that "the severity of [a plaintiff's] pain and the extent to which [a plaintiff] has lost enjoyment of normal activity are among the key issues a jury must decide in calculating [a plaintiff's] damages. Evidence which would tend to prove or disprove such losses must be considered 'substantive.'" *Id.*

## II. Motion for Sanctions and Attorneys' Fees and Expenses Pursuant to Rule 30(d)(2) [Doc. #208]

### A. The Parties' Contentions

#### 1. Tran

Tran seeks sanctions against Bordelon and its counsel, Robert Reich, for failing to cooperate in discovery by (1) repeatedly instructing Captains Meyer and Lee not to respond to questions during their depositions despite having no valid basis to do so and (2) improperly lodging speaking objections that favored Reich's position. Tran notes that Reich objected or provided commentary during Captain Meyer's deposition on 170 pages of the 360-page transcript.

Citing the deposition testimony, Tran first points to the dispute that arose when Nazareth asked Captain Meyer what he discussed with Reich before the deposition. The dispute necessitated a call to the Court. The Court ruled that because Meyer was not Reich's client (or employed by his client), the attorney-client privilege did not apply. The Court told Reich he could challenge the ruling but instructed the witness to answer plaintiff's counsel's question.

Citing another part of the deposition testimony from later that day, Tran notes that Reich objected again to the witness answering a question about the heading and speed of the vessel represented as it was on a graph. The parties had to call the Court again. Counsel for Tran asked the Court to order Reich to comply with this Court's earlier ruling. Reich had earlier left the room, and, when he returned, he informed the parties that Meyer had retained him as counsel. Co-counsel for consolidated plaintiffs and other defense counsel also had questions for the witness. The Court ruled that each of the three parties had one more hour to depose the captain, and the deposition was to end at 7:15 p.m. The Court also held that Reich was not Meyer's attorney.

Citing the deposition testimony of Captain Lee the following day, Tran notes that Reich's

behavior continued. Reich instructed the witness not to answer when counsel for Tran, Neil Nazareth, asked Lee whether it would be prudent to perform a certain action. Reich objected on the ground that the question called for an expert opinion under Rule 701. Reich shut down the deposition and left the room until the parties reached the Court by telephone. The Court informed Reich that he should object to the form, let the witness answer and then file the appropriate motion. Tran cites Rule 30(c)(2) as support for the Court's ruling. Rule 30(c)(2) provides that on objection, the examination of the deponent proceeds, and the testimony is taken subject to any objection.

Citing numerous other occasions during the deposition of Lee, Tran notes that Reich consistently instructed the witness not to answer questions if they were – in Reich's opinion – speculative or called for anything other than a lay opinion. Reich allegedly objected to any question that did not concern the actions of either captain on the date of the incident. Reich frequently objected on the ground of relevancy. Citing Rule 30(e)(2), Tran argues that counsel may only instruct a witness not to answer to preserve a privilege, to enforce a court order or to present a motion under Rule 30(d)(3) and for no other basis.

Tran also contends that Reich continually interposed speaking objections in an effort to suggest answers to the witness. Tran points to numerous cases in which courts have sanctioned attorneys when they stated lengthy objections that suggested an answer to the deponent. Citing the deposition transcript, Tran notes that Reich suggested answers to deposition questions numerous times. Tran points out that a number of the witnesses' answers are verbatim recitals of Reich's speaking objections. Tran notes that Reich's objections are rarely shorter than a paragraph and often consist of numerous pages of the deposition testimony. Tran seeks reasonable attorneys' fees and expenses for the delay and frustration of depositions.

### 2. Bordelon

Bordelon notes that at the outset of Meyer's deposition, counsel for Tran set the combative tone by threatening Meyer's license and by telling him that counsel for Bordelon would instruct him to lie. Bordelon argues that counsel for Tran badgered the witness by implying that Bordelon's counsel had coached him before the deposition. Bordelon argues that counsel properly objected to the questions of Tran's counsel because they were poorly framed, compound, confusing and called for speculation.

Bordelon notes that all questions were answered by the witnesses despite counsel's objections and instructions not to answer the questions. Bordelon also incorrectly contends that Reich did not instruct the witnesses not to answer questions after the conference with the Court.

### B. Law and Analysis

Pursuant to Federal Rule of Civil Procedure 30(c)(1), "[t]he examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence . . . ." Fed. R. Civ. P. 30(c)(1). "During the taking of a deposition the witness has, in general, the same rights and privileges as would a witness testifying in court at a trial." 8A Wright, Miller and Marcus, Federal Practice and Procedure § 2113 (2d ed. 1994).

> As officers of the court, counsel are expected to conduct themselves in a professional manner during a deposition. A deposition is intended to permit discovery of information in the possession of the deponent or perpetuate the testimony of the deponent. In either case, it is to be conducted in a manner that simulates the dignified and serious atmosphere of the courtroom. Thus, the witness is placed under oath and a court reporter is present. Conduct that is not permissible in the courtroom during the questioning of a witness is ordinarily not permissible at a deposition. . . A deposition is not to be used as a device to intimidate a witness or opposing counsel so as to make that person fear the trial as an experience that will be equally unpleasant, thereby motivating him to either dismiss or settle the complaint.

*Ethicon Endo-Surgery v. U.S. Surgical Corp.*, 160 F.R.D. 98, 99 (S.D. Ohio 1995). Pursuant to Rule

8

30(c)(2),

> [a]n objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

Fed. R. Civ. P. 30(c)(2).  "Depositions frequently have been unduly prolonged, if not unfairly frustrated, by lengthy objections and colloquy, often suggesting how the deponent should respond." Fed. R. Civ. P. 30(c) Advisory Committee's Note, 1993 amendments.  Appropriate objections include the form of the question or the responsiveness of an answer.  *Id.*  "Directions to a deponent not to answer a question can be even more disrupting than objections." *Id.*  Under Rule 30(d)(2),

> [t]he court may impose an appropriate sanction – including the reasonable expenses and attorney's fees incurred by any party – on a person who impedes, delays, or frustrates the fair examination of the deponent.

Fed. R. Civ. P. 30(d)(2).

> The rule also explicitly authorizes the court to impose the cost resulting from obstructive tactics that unreasonably prolong a deposition on the person engaged in such obstruction. This sanction may be imposed on a non-party witness as well as a party or attorney, but is otherwise congruent with Rule 26(g).

Fed. R. Civ. P. 30(d) Advisory Committee's Note, 1993 amendments.

As noted above, during the two depositions, counsel had to call the Court three times to resolve discovery disputes.  Having interacted with counsel during these calls and having reviewed the transcripts of the depositions of Captains Meyer and Lee, the Court finds unprofessional the behavior of both Tran's counsel and Bordelon's counsel.  However, the Court finds that the behavior of counsel for Tran warrants only a reprimand by this Court and a reminder that he must conduct himself at all time in accordance with the standards warranted by his profession.   The transcript reveals that counsel for plaintiff – Nazareth –  did not attempt to diffuse the situation when Reich

9

objected.  At the oral hearing, Nazareth even admitted that at times he did not conduct himself in a professional manner.  While Reich objects all too frequently, and the Court recognizes that Nazareth was obviously exasperated during the depositions, comments by Nazareth such as "That's a lie" did not diffuse but only exacerbated the dispute.  (Dep. of Captain Meyer at p. 24).  The Court also recognizes that threatening a deponent with criminal action and the possible loss of his captain's license is unprofessional as well and set the tone of Meyer's deposition as combative.

The Court also finds, however, that Reich is the instigator of the discovery disputes.  Tran is correct in noting, for example, that Reich objects on approximately 170 pages of Captain Meyer's 360-page deposition. Federal Rule of Civil Procedure 30(c)(2) provides that on objection, the examination proceeds, and the testimony is taken subject to the objection.  The Court finds that Reich should have simply objected to the question, let the witness testify, proceed with the deposition and file at a later time the appropriate motion to challenge the question and/or its introduction into evidence at trial.  This he never did.  Indeed, many of the disputes continue for pages upon pages of the deposition transcripts.

The Court finds that the majority of Reich's objections lacked a valid basis under the law, *i.e.*, when counsel objected on the ground that the question called for speculation.  Rule 30(e)(2) provides that an attorney may only instruct a witness not to answer to preserve a privilege, to enforce a court order or to present a motion under Rule 30(d)(3).  Reich rarely cited these grounds as a basis for his objection.  When he objected on one of these grounds, *i.e.*, the attorney-client privilege, the Court overruled the objection by holding that Captain Meyer was not Reich's client.

Further, the Court finds that Reich did not treat the deponents here as he would have been

required to treat them at a trial in a courtroom.[3] Indeed, the Court recognizes that Reich would never have been allowed to act as he did during the deposition at a trial in this district. By continuously objecting and instructing the deponents not to answer questions without a valid basis under the federal Rules of Civil Procedure, Reich needlessly prolonged the depositions of Captains Meyer and Lee. As noted above, at times, these discovery disputes lasted numerous pages in the transcripts. (Dep. of Captain Lee at pp. 76-94; *id.* at 133-42). Reich's objections impeded and frustrated the fair examination of these two deponents. Storming out of the room and unilaterally placing on hold the questioning further needlessly extended the depositions. While the Court recognizes that counsel need to be zealous advocates for their clients, zealousness has its bounds, and Reich crossed them here, as Reich recognized at the oral hearing.

The Court regrets the necessity for this action as it considers both Neil Nazareth and Robert Reich to be more than capable attorneys and trusts that, in the future, their adherence to the applicable rules will equal their skills in the representation of their clients. Accordingly,

**IT IS FURTHER ORDERED** that the Motion for Sanctions and Attorneys' Fees and Expenses Pursuant to Rule 30(d)(2) [Doc. #208] is GRANTED. The Court *sua sponte* reprimands counsel for Tran, Neil Nazareth. Counsel for Bordelon, Robert Reich, is sanctioned $1,500.00, payable immediately to counsel for claimant Phuc van Tran for frustrating and extending the depositions of Captains Meyer and Lee. Reich may not bill his client Bordelon for the sanctions but shall pay it out of his own coffers. Counsel shall notify Bordelon of this Court's order and notify the Court when he has done so.

---

[3] The Court notes that this is not the first time that Reich's behavior at a deposition has been called into question and resulted in the imposition of sanctions. *See Landers v. Kevin Gros Offshore, L.L.C.*, Civ. A. No. 08-1293, 2009 WL 2046587 (E.D. La. July 13, 2009).

New Orleans, Louisiana, this 19th day of January, 2011.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**